Call our next case in Re AGR Premier Consulting, Inc. Call our next case in Re AGR Premier Consulting, Inc. Good morning, Your Honors. May it please the Court, my name is Ron Roteman. I'm a partner at Stonecipher Law Firm in Pittsburgh here on behalf of 21st Capital Corporation, the appellant in this matter. Your Honors, I would ask to reserve three minutes for rebuttal, if I may. Thank you. We are asking today that the Court reverse the lower court's rulings that found 21st Capital in contempt and direct that the California action be permitted to proceed unimpeded by any further challenge in the bankruptcy court to the legal theories that 21st Capital wishes to pursue in the California action. You're suing based upon the accounts stated, the things told to you by Bayer that essentially are the fraudulent invoices, correct? Correct, Your Honor. I didn't find fraudulent invoices referred to in the stipulation. Maybe I'm wrong. The fraudulent invoices may not have been referred to directly in the stipulation. Which would be to your advantage. Right. Your Honor, we would ask that in considering the reversal of the lower court's rulings that their interpretation of the stipulation should be given no special deference. The judge, who was not the same person, by the way, as the judge who entered the order in the first instance approving the stipulation, gave effect to an interpretation of the stipulation that we believe is not at all apparent from its text. And that interpretation truly impairs 21st Capital's substantive rights in pursuing their state law claims. Well, maybe we should start with your assertion that the court had no jurisdiction to start with, right? Because typically we've got to start with jurisdiction. You say that under Stern v. Marshall, the Bankruptcy Court couldn't constitutionally, as you put it, strike any of 21st Capital's claims because the dispute does not in any way affect AGR's property. But it occurs to me that that's begging the question. I mean, isn't that the whole point of dispute between you and Bayer, is whether your efforts to proceed in California in fact do implicate AGR's accounts receivable? I don't think so, Your Honor. I don't believe that this is really a Stern v. Marshall issue. That's really secondary. We don't even believe we get to Stern v. Marshall because – I thought you guys raised it, but that's okay. If you're saying it's not, I'm happy to leave this. If you're letting go of that, we can move right ahead. Well, we'll certainly let go of it for now. Our principle – No, no, no. You're not letting go of it for now. You're either going to answer my question because I'm asking about it or you're going to say we're abandoning that. Because if you're not abandoning it, speak to it, please. You seem to have said, hey, this is – the Bankruptcy Court couldn't constitutionally address this because this has nothing to do with AGR's receivables. And the question I'm putting to you is, isn't that the point of dispute, whether this has something to do with AGR's receivables? And if that is the point of dispute, you're saying it isn't doesn't make that go away, does it? If I understand the question, I believe you're right and we would be prepared to abandon Stern v. Marshall on this issue. Let's move ahead. We believe that we can't get to even related to jurisdiction because the underlying dispute in the California action can have no conceivable effect on the outcome of any matter in the bankruptcy case without further litigation in the bankruptcy case. The plain language of the stipulation, Your Honors, provides that in the California action 21st Capital may pursue any claim without without limitation the 21st Capital claim and that only in the event it were discovered in the course of the California action that there were additional sums that Behr owed AGR. Would it then become incumbent upon 21st Capital to return to report that to the trustee at which point either the trustee or Behr would be in a position to come back to the bankruptcy court and ask the bankruptcy court to rule upon the disposition of those assets? Perhaps I'm oversimplifying, but it strikes me that your theory as to why the bankruptcy estate is not at all a claim is that your claim against Behr involves accounts receivable that have been assigned to you and having obtained those assigned accounts you dealt directly with Behr, asked them to confirm whether these were accurate accounts. They apparently did confirm them and so your claim is directly against Behr on that basis and that's really what you are pursuing in the California action and because you're dealing only with accounts receivable that were previously assigned there's no way in which the bankruptcy state is implicated. Is that basically your theory? Not quite, Your Honor. I appreciate the question. We are pursuing accounts that have been assigned and we are not pursuing accounts receivable. We think part of the issue here is that these terms have been used interchangeably in a manner that really cannot be substantiated. Look at the definition in the stipulation of Behr receivable and accounts receivable which is what the stipulation is all about. I believe it's your contention that those terms do not include what you are pursuing Behr for. In other words, payments due and owing by Behr to debtor on or before July 20th for certain invoiced and uninvoiced amounts for services rendered by or on behalf of the debtor before they ceased operations in the amount of $302,000. That's the Behr receivable. You're not pursuing that at all, correct? Correct. And then any amount owed with respect to services actually performed by or on behalf of the debtor for Behr which Behr has not paid are an asset of the debtor's estate referred to as accounts receivable. And if your answer to my question earlier that it's the fraudulent invoices, i.e. no services rendered that you're pursuing, what you're pursuing is not included in the definition of accounts receivable either. Is that correct? I think that's correct, Your Honor. I'm wondering why we're here. Perhaps the problem is, and your opposing counsel I'm sure will have an opportunity to speak to this, but one of the things that they say is, look, here are the jury instructions that those guys submitted in the California action. Now we don't, they didn't actually put them in the record. They characterize them though. And they say, and purport to quote them, but they say that the proposed jury instructions provide that if 21st Capitol proves that AGR provided services to Behr and that reasonable value of the services were provided by 21st Capitol to AGR, then Behr owes 21st Capitol money for those services. If that's an accurate statement by them, then that sounds like your jury instruction proposed in the California action was if AGR performed services and if 21st Capitol actually gave money to AGR for that, then Behr owes 21st Capitol money. If that's not a statement about accounts receivable and give us that money, i.e. money that would otherwise go to the estate, what is it? Now there's a lot there and you can start with disputing whether they've accurately characterized it. But if that's an accurate characterization, what is that jury instruction except for an effort to get at AGR's account receivable? I'll start by saying I don't believe it is an accurate characterization, although I can't follow it by telling you what would be an accurate characterization of that jury instruction. What I can tell you, Your Honor, is that the stipulation is very clear and I believe that even the bankruptcy court recognized it in its memorandum opinion. All the parties, the parties being 21st Capitol, Behr, and the Chapter 7 trustee have agreed that 21st Capitol is not pursuing either the Behr receivable or any accounts receivable. But if that jury instruction is correct, then you are. You're saying, and if it's found that the services were rendered, if the money is owed to us, then that's an account receivable. Isn't that important for us to know and for you to be able to state whether it's accurate? Well, given what Judge Jordan just said, that's a fair statement. But I don't, I can't, I can't really respond to that. I don't believe that's an accurate characterization. How far did the California Action proceed that you had jury instruction? That was... Did she get, like, within a week? I was, we're still at a point where we're filing an amended complaint in that proceeding and I don't even know that, there may have been an initial answer filed, but the case is, I don't even know the discoveries commenced. So I'm not, I can't respond about a proposed jury instruction. I can only tell you that, you know, again, I keep returning to the plain language of the stipulation. It's in the appendix at 402 apparently. Anybody have the appendix? I have the appendix, Your Honors, but I don't know that with the time remaining I'm going to be able to... I mean, because that's really important. If that claim is in the California Action, there is an interest of the estate. Because it fits within definition of account receivable. If it's discovered that the services were rendered, slam bam, thank you ma'am, it's right there. I appreciate that. Again, we are not pursuing account receivable. So you would take that out of your proposed jury instruction? We would have to, wouldn't we? Is that jury instruction, is that consistent with how you characterize the theory of an account stated? It doesn't sound like it's at all compatible with the theory of an account stated. No, very true. Very true. And again, I return again to the plain language of the stipulation. We are not pursuing accounts receivable. We are not pursuing the bare receivable. The most that can be said of the outcome of the California Action is that it may give rise to some future claim that BEHR may wish to assert against AGR, which would be a whole different proceeding and we believe that it is wholly unrelated to the bankruptcy case. There is this, it seems a bit of a curiosity to me at least, that there's an acknowledgement by everybody that the invoices that are at stake in the California Act, that involves they're fraudulent. And I gather it's your position that the legal significance of that, whether that would affect your ability to collect in the California Action, that is an issue to be determined in the California Court. Is that correct? Absolutely. Thank you. Mr. Kelleher, maybe you can help clarify what this case is about. I'm really confused. If it may please the Court, I can take my best shot at that if that has baffled two courts below you and the opposing counsel for at least four years now. Can't we all just get along? Can't you resolve this somehow? We thought we could and we thought we did when we entered into the stipulated order. Well, what's wrong with what's going on in California? They're pursuing Bayer because Bayer said, oh, we'll pay these. And so they think Eureka, we've got some pocket because these are fraudulent invoices and the debtor doesn't have any interest. What's going on? Again, what's going on is 21st Capital is desperately seeking to come up with some theory, notwithstanding there are no facts nor law that support it, to go after Bayer. When you say there's no facts or law, this is what really puzzles me. If your position now is, and it seems to have morphed over time, frankly, but if your position now is they can't come after us for anything that has to do with the business that we did with AGR and with them, if that's the point of your, because anything that has to do with that implicates the estate, if that's your position, then what was the point of entering the stipulation? It seems like a massive charade if the point of the stipulation wasn't to say there's this thing that it's okay for them to go after. If they think they've got a claim against us based on our communications with them, go to California and knock yourself out. If that isn't the point of the stipulation, what is it, Mr. Keller? The point of the stipulation and all the proceedings before the bankruptcy court, including the contempt motion, were simply to protect the property of the bankruptcy estate. And that involved receivables based upon services delivered. Correct. And it's limited to those. So how does that involve the fraudulent invoices? Because the only way that 21st Capital can support its theory against Bayer is to prove that there was an account receivable. No, it's to prove that I communicated with, this is the theory I understand, their theory is we had these things, we call them ICAs, but what they really are is an agreement between us, 21st Capital and Bayer, that they're going to pay us because we've already paid AGR. So we have this thing going and we've been doing it for years. And now they stopped paying it and they should have to pay it. And they told us that they were going to pay them. So we're suing on that. And it's not an account receivable as defined in your stipulation because it's not based on services rendered. It's actually based on services that were never rendered, but which Bayer, nonetheless, said we'll pay this. It is an account receivable, Your Honors. How does that square with the exact language of the stipulation? Take us through this language. It says any amount owed with respect to services actually performed by or on behalf of debtor for Bayer, which Bayer has not paid, are an asset of the debtor's estate. In other words, if there were actual services, that's not what we're calling an account receivable. And other than the Bayer receivable, which is also off the table, everything else that we call here, we're going to call an account receivable. That's a very specialized definition, which specifically takes the actual services out of it. And you have to put in context what 21st Capital is doing with the California action. Again, the stipulation protected the property of the bankruptcy estate, which was defined as accounts receivable. If any account existed, it was property of the bankruptcy estate. For services performed? For services Two days after that stipulation was signed by the parties, even before the bankruptcy judge approved it, 21st Capital amended their complaint to add a breach of contract count under their UCC theory, 9403 and 9404. Yes, against Bayer, Your Honor. And an account for money had and received, they subsequently dismissed that, and for goods and services sold and delivered. That was their attempt to comply with this On the plain face of that count, it implicates an account receivable. How? When you say on the plain face of it, that's where you've lost me, candidly. If they say I gave Bayer Bayer owes me money because this is what I'm trying to, over our course of conduct, get from them, they represent that this What's the problem with that theory? The problem is that's not their theory. Bayer was not sued on any misrepresentation, was not sued on what is defined as the 21st Capital claim as the alleged direct contractual relationship. They were sued on this theory that, which by the way, the bankruptcy court didn't approve and which Bayer hotly contests and wasn't decided below, but their theory is Bayer entered into these ICAs with AGR and AGR is the debtor. I know that, but who do they communicate these ICAs to? To AGR or to Bayer? They are in agreement with Bayer and AGR that says if you give us this invoice, we'll tell you whether it's due or not. And 21st Capital had a relationship with AGR not with Bayer. But the only one thing they're trying to collect is the fraudulent invoice. Isn't that correct? Isn't that correct? That's the theory that has morphed over time. Is it correct that they are just pursuing the fraudulent invoices? They are pursuing. And how are the fraudulent invoices implicated in the stipulated order? Because the only way they can establish based on the counts in their complaint with the bankruptcy court and what the district court looked at is by proving something? By proving that there's an account. And what they're trying to do is say this is an account in the UCC parlance and therefore we can prohibit. So the stipulated order doesn't say you can never refer to accounts receivable in anything even if all you're trying to collect is something that is an account receivable, does it? It says they can pursue the 21st Capital claim. I know I just don't try to get involved in the California action and intervene and let your voice be heard and let them pursue it and if they get any money then all the better. I just don't understand why there's a contempt for a violation of the stipulated order. Everybody agrees apparently, that's what we're told, that we're dealing with fraudulent invoices. How can those fraudulent invoices in any sense be an asset of the estate? I just, that doesn't, that defies logic it seems to me. So I'm struggling to understand how the integrity of the bankruptcy state is in any way implicated by what 21st Capital is trying to do in this California action. And as I said in my opening response to Judge Randell, Your Honor, that's exactly what we and both courts below have been struggling with for years. We don't know why we're being sued for an admitted fraudulent invoice. We'll fight that out in the California court. And if that if we were sued just for fraud, we would. We wouldn't be here. But we're being sued on the theory that there is an account which gives rise to this 9403 9404 defense. That's a matter for you to take up in California. Look, isn't the whole point of this stipulation seems to be to say hey, there's a fraud here. AGR was a bad actor. And that fraud is going to have financial consequences either for me, 21st Capital, or for you there. Okay? So it's going to hit one of us and let's figure out who's going to take it for that. Which of us is going to take the hit? And that we'll decide in California. Everything else is in the bankruptcy court. Isn't that the import of the stipulation? I think the import is if there is any litigation over whether an account or property of the bankruptcy estate exists, that will occur in the bankruptcy court. If there's some other claim, 21st Capital can drum up. But what other claim could there be? Everybody agrees that there's not some free-floating other thing. AGR and 21st weren't associating on some other basis that we know of. 21st and Bayer weren't associating on some point we don't know of. Everybody knows that what we're talking about here is the fraudulent invoices. And 21st Capital's assertion that in communicating with Bayer, we have an independent right that's come up and we want to pursue that in California. Now, I read the artfully or inartfully drawn, like that appears to be what's being carved out. Is that not what's being carved out? That overstates it slightly, Judge Jordan, but that is what's being carved out. The problem is that's not what's being pursued. Okay, well those are two different things, right? Where in the stipulation? Those are very different things. And I'm setting aside their jury instruction piece. We'll get to that in a second. Maybe they're not abiding by the stipulation, but for right now, just the fact that they could do this, that they could bring a claim, they could call it an account stated, they could have a theory for recovery which is you represented that you'd pay us on these invoices and we think that's an account under California law. That's something that by the stipulation's terms is appropriate for a California court to decide and maybe they'll agree with you and say that's a bunch of hogwash and throw it out, but it's for California, right? No. They can't pursue that account stated because the underlying linchpin of an account stated claim is that there is an account between the debtor and bearer. That's what the stipulation said must be in there. Where in the stipulation? Where is the stipulation being violated? Give us the specific provision. It says that 21st Capital cannot pursue the accounts receivable. That's what they're doing. They're not pursuing the accounts receivable because they're pursuing the fraudulent invoices. Correct? No. Under their theory of the complaint, as they attempted to amend the complaint, including the request to add an account stated claim, they are saying there's an account between bearer and 21st Capital, bearer and AGR, and we're entitled to collect that in California. The account stated piece means that bearer said to 21st Century, we will pay these. That's the account stated. That's part of it. That's their argument, Your Honor. The predicate for that is that there has to be a pre-existing account under California law, and I believe there are three other jurisdictions of accounts stated, before you get to whether the account has been stated or not. Again, it's what both courts looked at below and said, they can't get to that. Put aside bearer's factual defenses. They can't get to that claim unless they establish that they're pursuing an account between bearer and AGR. You say so confidently that there has to be an underlying debt. I guess your point is that if there was fraud in the relationship between AGR and bearer, then there's a good argument that there is no underlying debt, but they make the point that the relevant fraud is in the relationship between 21st Capital and bearer, and if there was some fraud in the procurement of the confirmation of the validity of those invoices that have been assigned to 21st Capital that they then submitted to bearer for validation, yeah, that's the fraud that's relevant, but again, it's their position that the fraud in the relationship between AGR and bearer is simply not relevant under California law. And again, we're not being sued. The California law of accounts stated. Correct. We're not being sued for fraud. Neither of the courts below made the finding on all the disputed components of that fraud claim. If it had been asserted, they're suing us on this account stated or originally for goods and services sold and rendered, and yes, you can't get to that account because of the fraud, but even if they got to the account, that's exactly what's implicated under the stipulation, and both courts said you can't possibly assert the claims for these accounts without violating the stipulation, therefore you have to. Where's the debtor in all this? The debtor was a Chapter 7 debtor and a trustee was appointed. The trustee was a party to the stipulation, asserted a claim to the accounts receivable. Well, there's the debtor. This is what the trustee says when asked whether 21st Capital should be permitted to continue its California action. The trustee said, quote, I think what they're alleging is because someone inside BEAR also validated or somehow validated these invoices then 21st Capital was induced to factor this money to AGR and as a result of that, they were harmed also by, you know, separate actions by an employee of BEAR. So that's not to me an account receivable action and whatever, but again, my position is I don't have any account receivables against BEAR. That's the trustee's statement, right? And do you disagree with that statement? No, everyone agreed that other than the BEAR receivable paid pursuant to the interpleader action was the only account receivable that was valid. So there you go. Here's my theory perhaps about for what it's worth, for how we might have gotten here. It seems like there may be a very legitimate concern if the jury instructions that you characterized in an earlier filing, the one that I quoted from that's in the joint appendix, if that's really the nature of the jury instruction they're seeking, well then that would seem indeed to be an effort to get at money of the estate of the bankrupt and that would be pretty dang troubling. But it's not like you guys went to the court and said, hey look at these jury instructions, I want an order specifically forbidding them from pursuing that. You went and got an order of contempt on a stipulation which apparently is ambiguous enough that the people who negotiated it can't even say what it means while they're standing before a bankruptcy court, a district court, and now a court of appeals. And if that's where we're at, then under the law of contempt, ambiguities being construed in favor of the alleged contender, this seems at this point like a lot of wasted effort when what you ought to be doing is going to the bankruptcy court about your specific complaint and pushing them off those jury instructions. Your Honor, with all due respect, I think there was no ambiguity that troubled either of the courts below. They both agreed that what 21st Capital is doing is pursuing an account receivable. The trustee of the bankrupt estate doesn't have interest. If 21st Capital had sued us on fraud, 21st Capital in their first amended complaint and now in the second amended complaint that they're trying to get leave to pursue pursues this account stated and this account claimed. They can't possibly prevail on that unless they violate the stipulation. That's what both the district court and the bankruptcy court clearly found. Alright, thank you. Thank you, Your Honor. Your Honor, I would only point out that, you know, again, the stipulation I think is clear. I appreciate Judge Jordan, your comment that it may be ambiguous, but I think it is clear that it says that only if  plaintiff's claim that the plaintiff's claim is determined in the course of the California action, this is paragraph five of the stipulation, that Bayer owes additional sums to the debtor for services actually performed by the debtor, that is if any accounts receivable actually exist, end quote, it becomes incumbent upon 21st Capital to report that to the trustee. How are they supposed to get you guys to live by the stipulation? If in fact the jury instructions submitted by your client in the California action are as they were represented to be, and they do under those terms go directly against the accounts receivable of the estate, how are they supposed to make sure you're not playing fast and loose with the bankruptcy court by saying, oh, this is all we're going to do and then going to California and doing something different? Isn't it by contempt? It is not by contempt, Your Honor. If the California court were to find that the only way we can maintain this particular claim in the California action is to be pursuing capital A accounts, capital R receivable, we lose. I think you're missing my point. It's not so much a legal question, it's just a straight up, what are you doing? In the California, if the jury instruction is as was represented, then you'd be pretty hard pressed to say it is not an effort to get at AGR's accounts receivable, wouldn't you? With apologies to the court, I don't know that I can answer that question. I guess there was anticipated there might be some confusion, because you wouldn't put paragraph 5 in if it was absolutely certain. And it seems to me paragraph 5 anticipates what might happen if it is discovered that there are accounts receivable. And to my mind, maybe your jury instruction, and you're supposed to promptly notify the debtor and this court will enter an appropriate order. So the possibility was out there and you could say the jury instruction is intended to make sure you're making that determination and being able to comply with paragraph 5. That may be very fair, Your Honor. I can appreciate that. I think those are all things that should be played out in the appropriate California court. For the benefit of my understanding of what's going on here, in terms of your claim against Bayer and the California action, what is the relevance to that claim as to whether AGR actually provided the consulting services, whatever services are implicated, to Bayer? Is that at all relevant to your, what's been characterized as your independent claim, which I understand to mean that it's really independent of whatever services were actually provided by AGR to Bayer. No, I appreciate that. I do not think it is at all relevant because we know, and I can't recall whether we articulated this in our briefs or not, but we know that there were no services provided in connection with the invoices pursuant to which we were. How do you account for that instruction that Judge Jordan read? I hate to continue to give the court a blank look on that one, but I am unable to respond relative to that instruction. Thank you. Thank you for hearing us.